FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARTIN T C.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | NO: 1:20-CV-3096-RMP<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Martin C.[1], ECF No. 13, and Defendant the Commissioner of Social Security ("Commissioner"), ECF No. 15. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). *See* ECF No. 13 at 2−3. Having reviewed the parties'

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

1 motions and the administrative record, the Court is fully informed. The Court grants
2 in part Plaintiff's Motion, denies the Commissioner's Motion, and remands for
3 further proceedings.

## BACKGROUND

5 Plaintiff applied for SSI on April 26, 2018, when he was 52 years old,
6 asserting that back problems, including arthritis in his back, anxiety, and post-
7 traumatic stress disorder ("PTSD") prevented him from being able to sustain
8 substantial, gainful employment. Administrative Record ("AR")[2] at 198, 220.
9 Plaintiff initially alleged a disability onset date of September 1, 2011. AR 198. The
10 application was denied initially and upon reconsideration, and Plaintiff requested a
11 hearing. AR 167.

12 Administrative Law Judge ("ALJ") Elizabeth Watson held a hearing on
13 August 16, 2019, from Portland, Oregon, with Plaintiff appearing by video from The
14 Dalles, Oregon. AR 93. Plaintiff was represented by attorney Kathryn Higgs[3] at the
15 hearing. AR 93. The ALJ heard testimony from Plaintiff and from vocational
16 expert Richard Hincks. AR 94–117. At the hearing, Plaintiff amended his alleged
17 disability onset date to July 23, 2012. AR 94.

---

[2] The AR is filed at ECF No. 11.

[3] Plaintiff appointed both Nicholas Jordan and Kathryn Higgs to represent him before the Social Security Administration. AR 193.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 2

Plaintiff was 53 years old by the time of the hearing. AR 110. Plaintiff testified that he completed school through ninth grade and is in the process of completing his GED. AR 95. Plaintiff recalled that he stopped engaging in self-destructive behavior, including using methamphetamine, in April 2017, and "really started feeling things, . . . physically, mentally." AR 98. Plaintiff, who was standing during his testimony, explained that he experiences numbness and a burning sensation on his left side and has a limited range of motion in his right hand, including muscle cramping and stiffness if he grabs or presses something in a way that triggers his symptoms. AR 99. Plaintiff also testified that he experiences "wrap-around" tightness through his left shoulder, chest, torso, and back following surgery for stenosis. AR 102–03. Plaintiff stated that he previously used drugs to numb himself. AR 103. Because Plaintiff wishes to avoid treating his pain and discomfort with opioids, Plaintiff participates in physical therapy. AR 100. Plaintiff also recounted that he goes on walks to relieve stress and as a form of meditation. AR 100. Plaintiff also described struggling with focusing and interacting with people because of his PTSD, although Plaintiff noted that he can "process better" by taking medication for attention deficit hyperactivity disorder ("ADHD") and by receiving support from his "huge support group." AR 101–02.

The ALJ posed two hypotheticals to the vocational expert, Mr. Hincks. The ALJ first asked Mr. Hincks to consider someone of the same age as Plaintiff, with

the same age, level of education, and past work experience, who is limited to lifting and/or carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking six hours, and sitting six hours in an 8-hour workday with normal breaks. The ALJ added that the hypothetical individual is limited to understanding and carrying out simple instructions in a work environment with few changes; occasional contact with the public; frequent climbing of ramps or stairs and occasional climb of ladders, ropes, or scaffolds; frequent stooping, kneeling, crouching, and occasional crawling; and no overhead reach, although frequent reach in other directions is acceptable. AR 110–11. The ALJ also provided that the first hypothetical person must avoid concentrated exposure to extreme cold and excessive vibration and concentrated exposure to workplace hazards, such as unprotected heights and operational control of moving machinery. AR 110.

Mr. Hincks responded that a person with those characteristics and limitations would not be able to perform Plaintiff's past work but would be able to perform some "unskilled light work," including in the cluster of jobs called "bench work occupations," involving entry-level inspecting, packaging, and sorting work, as a production assembler, or as a pricer who affixes pricing and sizing information on retail items before they are displayed for sale. AR 111.

The second hypothetical that the ALJ posed to Mr. Hincks described a person with the same age, education, and past work as Plaintiff with the following

limitations: sedentary work; understanding and carrying out simple instructions in a work environment with few changes; occasional contact with the general public; occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional stooping, kneeling, crouching, and crawling; and no overhead reach, although frequent reach in other directions is allowed.  AR 112.  The second hypothetical person also must avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards such as unprotected heights and operational control of moving machinery.  AR 112.

Mr. Hincks responded that a person with those characteristics and limitations would not be able to perform Plaintiff's past work.  AR 112.

***ALJ's Decision***

On September 12, 2019, ALJ Watson issued an unfavorable decision.  AR 76–86.  Applying the five-step evaluation process, ALJ Watson found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since April 5, 2018, the application date.[4]  AR 79.

**Step two:** Plaintiff has the following severe impairments that each impose more than slight limitations on Plaintiff's physical and mental ability to perform basic work activities: degenerative disc disease of the cervical, thoracic, and lumbar

---

[4] The application itself indicates an application date of April 26, 2018, as recited above.  AR 198.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 5

spine; bilateral shoulder degenerative disc disease; depressive disorder; anxiety disorder; and post-traumatic stress disorder ("PTSD").  AR 79.  The ALJ further found that Plaintiff has a non-severe impairment of "alcohol and drug abuse." *Id.*

**Step three:**  The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had the RFC to: perform light work as defined in 20 CFR 416.967(b).  The ALJ concluded that Plaintiff is:

> limited to frequent climbing of ramps or stairs and occasional climbing of ladders, ropes, or scaffolds.  The claimant is limited to frequent stooping, kneeling, crouching, and occasional crawling.  Bilaterally, he is limited to no overhead reach and frequent reach in other directions.  He must avoid concentrated exposure to extreme cold and excessive vibration.  He must avoid concentrated exposure to workplace hazards such as unprotected heights and operational control of moving machinery.  He is limited to understanding and carrying out simple instructions in a work environment with few changes. He is limited to occasional contact with the general public.

AR 81.

In determining Plaintiff's RFC, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms that Plaintiff alleged, Plaintiff's statements concerning the intensity, persistence and limiting effects of the same symptoms "are not entirely consistent

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 6

1  with the medical evidence and other evidence in the record[.]" AR 82.  The ALJ

2  further found: "Given the claimant's allegations of totally disabling symptoms, it is

3  reasonable to find some indication in the treatment records of functional restrictions

4  placed on the claimant by a treating physician." AR 84.

5       **Step four:** The ALJ found that Plaintiff is not capable to perform his past

6  relevant work as a dishwasher or laminated and plastics assembler.  AR 85.

7       **Step five:**  The ALJ first found that Plaintiff has a high school education, is

8  able to communicate in English, and that "[t]ransferability of job skills is not

9  material to the determination of disability because using the Medical-Vocational

10 Rules as a framework supports a finding that the claimant is 'not disabled,' whether

11 or not the claimant has transferable job skills." AR 85 (internal citation omitted).

12 The ALJ found that there are jobs that exist in significant numbers in the national

13 economy that Plaintiff can perform considering his age, education, work experience,

14 and RFC.  AR 85–86.  Specifically, the ALJ recounted that the vocational expert

15 identified the following representative occupations that Plaintiff would be able to

16 perform: hand packager, production assembler, or pricer.  AR 86.  The ALJ

17 concluded that Plaintiff had not been disabled within the meaning of the Social

18 Security Act at any time since the April 5, 2018, the date on which Plaintiff filed his

19 application. AR 86.

20      The Appeals Council denied review.  AR 1–4.

21

# LEGAL STANDARD

***Standard of Review***

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

/ / /

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 9

*Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); see also 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past. If the

claimant can perform his previous work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At this step, the claimant's RFC assessment is considered. If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering his residual functional capacity and age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1. Did the ALJ erroneously discount Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms?

2.   Did the ALJ improperly reject the medical opinion evidence?

4.   Did the ALJ reach erroneous conclusions regarding Plaintiff's RFP, resulting in harmful error at step five of the sequential, evaluation?

## DISCUSSION

*Treatment of Plaintiff's Testimony*

Plaintiff argues that his statements have been longitudinally consistent with reports from his main treating providers. ECF No. 16 at 2 (citing *Mendoza v. Apfel*, 88 F.Supp.2d 1108, 1114 (C.D. Cal. 2000) ("Consistency of individual's own statement is one strong indication of credibility, especially those complaints that are made to treating or examining medical sources.")). Plaintiff further argues that the ALJ erroneously dismissed Plaintiff's symptom statements based on two goals that Plaintiff set for himself during treatment, a goal of increasing his fitness level and get back to work in a physical job "if he can," set in physical therapy in January 2018, and a goal of becoming an art therapist set in a mental health appointment in April 2018. ECF No. 16 at 2. Plaintiff asserts that neither goal has yet been achieved. *Id.*

The Commissioner argues that the ALJ reasonably discounted Plaintiff's subjective complaints because the ALJ found that Plaintiff's assertions about the severity of his symptoms were inconsistent with statements he made about his improved physical and mental condition within proximity to applying for SSI. ECF

1   No. 15 at 5.  The Commissioner also argues that the ALJ appropriately considered

2   that Plaintiff has not pursued an aggressive treatment program in determining that

3   Plaintiff's symptoms are not as intense or persistent as he claims.  *Id.* at 6−7 (citing

4   *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).  The Commissioner

5   asserts that Plaintiff has managed to relieve his back and neck problems through

6   physical therapy and that "[t]reatment for [Plaintiff's] anxiety has also consisted

7   primarily of therapy, which [Plaintiff] felt was more effective than medication."  *Id.*

8   at 7.  The Commissioner argues that the ALJ's conclusions are supported by

9   evidence in the record that Plaintiff worked full time as a dishwasher for three

10  months in 2016, several years after his alleged disability onset date of July 23, 2012,

11  and that Plaintiff's physical and mental status examination findings are "mostly

12  normal."  *Id.* at 7−8 (citing AR 96, 659−60, 731, 879)

13      Plaintiff responds that Defendant mischaracterizes the record by indicating

14  that Plaintiff expressed a desire to discontinue taking Seroquel to treat his PTSD

15  because his PTSD and anxiety were stable.  ECF No. 16 at 3.  Rather, Plaintiff

16  argues that the record reflects that Plaintiff merely wanted to try to cease taking that

17  medication, and identify an alternative medication, because Seroquel was causing

18  drowsiness and poor memory as side effects.  *Id.* (citing AR 729−39).

19      The parties do not dispute, and the ALJ found, that Plaintiff presented medical

20  evidence of an underlying impairment that could have caused some degree of the

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 13

symptoms Plaintiff has alleged. AR 82. The Commissioner also does not assert that Plaintiff is malingering. In the absence of malingering, an ALJ may discount a claimant's testimony regarding the severity and persistence of symptoms only by specifying which testimony she finds not credible, and then provides clear and convincing reasons, supported by evidence in the record. *Smith v. Kijakazi*, No. 20-35487, 2021 U.S. App. LEXIS 29630, at *11 (9th Cir. Oct. 1, 2021). The clear and convincing reasons must be relevant to the specific portions of the claimant's testimony that the ALJ has rejected. *Smith*, 2021 U.S. App. LEXIS 29630, at *11.

The ALJ discounted the following testimony from Plaintiff:

> The claimant alleges that PTSD, anxiety, back problems, and arthritis prevent him from working. He testified that on his left side he experiences numbing and burning depending on what he is doing. He stated that since starting physical therapy he has learned not to push himself too much as to not aggravate his injuries. The claimant also testified that he has a long history of PTSD and depression that is triggered by stress.

AR 82 (internal citation to Disability Report—Adult Form, dated April 27, 2018, omitted).

The ALJ proceeded to cite the following record evidence as reasons to discount Plaintiff's testimony:

> In January 2018, the claimant reported that he was ready to increase his exercise and fitness now that his neck and shoulder symptoms are improving; and indicated a willingness to get back to work at a physical job. In February 2018, the claimant reported that since he is off meth he has been going to therapy and improving to the point where he wants to be off his depression medication. Physical therapy notes from

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 14

> February 2018 indicate that the claimant's chief complaint was neck pain but he was able to continue with "vigorous" workouts with good tolerance. Physical therapy notes also indicate that sleeping in the wrong position aggravates his neck pain but hot showers ease his symptoms. In April 2018, the claimant was found to be positive for joint pain, myalgias, and neck pain but negative for back pain and negative for depression. The claimant was noted to have normal station and gait and minimal decreased in range of motion. Mental health examination notes from April 2018 indicate that the claimant's depression and mental symptoms have improved over the last year since becoming sober. In August 2018, the claimant reported having generalized anxiety and sleep problems. The claimant was found to have a substantially normal physical and mental examination including adequate memory, average fund of knowledge, fair insight, and fair to poor judgment. In October 2018, the claimant underwent an MRI of the cervical spine that found moderate C4-C4 disc protrusion with mild cord compression; and narrowing of the neural foramina at C3-C4 right and left, and C6-C7 right. Mental health notes from October 2018 note that the claimant's treatment will focus on a reduction of behavior and affective symptoms of depression, which will increase his feelings of worthlessness that threaten his recovery. In April 2019, treatment notes indicate a substantially normal mental and physical examination with some evidence of tenderness in the upper back. In June 2019, the claimant underwent an MRI of the cervical spine that found a prior fusion at CS-CS, disc space narrowing with protrusion and foraminal narrowing at C3-C4, which he may eventually need a fusion or artificial disc at [sic].

AR 82–83 (internal citations to administrative record omitted).

The ALJ further found that Plaintiff's subjective symptom testimony is inconsistent with his regular activities of going to the grocery store three blocks away, doing laundry, and going shopping, and the ALJ noted that the treatment that Plaintiff has received related to his ailments is "essentially routine and conservative in nature." AR 84.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 15

Earlier in the decision, at Step Two of the sequential analysis, the ALJ found that Plaintiff has severe impairments in the form of degenerative disc disease of the cervical, thoracic, and lumbar spine; bilateral shoulder degenerative disc disease; depressive disorder; anxiety disorder; and post-traumatic stress disorder ("PTSD"). AR 79. The Court addresses the reasons provided by the ALJ for discounting Plaintiff's testimony regarding the intensity, persistence, and limiting effects of those impairments in turn.

First, grocery shopping, doing laundry, and going shopping are not equivalent to the six hours of standing or walking that the ALJ found Plaintiff to be capable of doing while performing light work. *See* AR 81. Consequently, Plaintiff's engagement in these activities listed by the ALJ does not amount to a clear and convincing reason to find that Plaintiff's impairment is less severe than he claims. *See Smith*, 2021 U.S. App. LEXIS 29630, at *11; *see also Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986)*; Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that plaintiff has carried on certain daily activities, such as . . . driving a car . . . does not in any way detract from her credibility as to her overall disability.").

Likewise, while an ALJ may consider "unexplained . . . failure to seek treatment or to follow a prescribed course of treatment" in rejecting a claimant's testimony about the severity of his symptoms, the ALJ did not specify how the

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 16

record reflects a failure by Plaintiff to seek treatment or follow recommendations prescribed, only that Plaintiff's treatment was "essentially routine and conservative in nature." *See Craig v. Astrue*, 269 Fed. Appx. 710, 711 (9th Cir. 2008); *see* AR 82–83. The record reflects that Plaintiff sought medical attention on numerous occasions for musculoskeletal pain and other symptoms prior to and after filing for SSI, attended physical therapy, and participated in mental health counseling. *See* AR 639–85; 740; 882–89. The Court does not find substantial evidence to support an inference that Plaintiff failed to seek treatment or follow prescribed treatment or that there was a more aggressive treatment approach that Plaintiff should have pursued. Therefore, Plaintiff's "routine and conservative" course of treatment is not a clear and convincing reason to discount Plaintiff's testimony.

Third, the Court finds that Plaintiff's goals for physical therapy and mental health treatment do not undermine Plaintiff's credibility, particularly where there is no indication that Plaintiff has yet realized those goals. *See Mkrtchyan v. Colvin*, No. C14-1209JLR, 2015 U.S. Dist. LEXIS 59515, at *16 (W.D. Wash. May 5, 2015) (finding setting a goal in physical therapy of returning to work did "not logically undermine the claimant's credibility").

Fourth, although the ALJ broadly summarizes medical evidence at AR 82–83, the ALJ does not explain how Plaintiff's ongoing reports of pain and other symptoms, which at times are characterized by Plaintiff as amounting to a

debilitating limitation on functioning, are inconsistent with medical evidence. Accordingly, the ALJ's reasons for discounting Plaintiff's testimony do not satisfy the requirement of clear and convincing reasons supported by substantial evidence.

The Court does not reach the remaining issues raised because the Court has already found harmful error in the form of an inadequate basis for rejecting Plaintiff's testimony.

***Remedy***

The Ninth Circuit Court of Appeals has held that "[a] district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (quotations omitted). A court should take the exceptional step of remanding for an immediate award of benefits only where:

> (1) The ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence [probative of disability], (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (internal quotation omitted). By contrast, remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 18

Cir. 1989). Even if these requirements are met, the court retains "flexibility" to "remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1021.

The Court does not find that the record as a whole compels a finding that Plaintiff is disabled or that the credit-as-true factors have been satisfied. For instance, a physical exam that Plaintiff underwent approximately three months before he applied for SSI, and relied on by the Commissioner on appeal, showed that Plaintiff was negative for back pain, had good range of motion in his shoulder and no indication of neuropathy, and was "very stable" with respect to his PTSD "now that he is working on sleep, not using meth, and going to regular meetings and therapy . . . ." AR 660. Further administrative proceedings would be able to further develop the record with respect to whether Plaintiff's subjective complaints should be accepted and with respect to the onset date of any disability.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED IN PART** with respect to remand and **DENIED IN PART** with respect to remanding with instructions to credit any evidence as true and award benefits.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 19

2.	Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3.	The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.	Judgment shall be entered for Plaintiff.

5.	In addition, the District Court Clerk shall **AMEND THE CAPTION** in CM/ECF to reflect that Acting Commissioner Kilolo Kijakazi is substituted for Andrew Saul as the proper Defendant in this matter.  *See* Fed. R. Civ. P. 25(d).

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, provide copies to counsel, and enter judgment and amend the caption as directed.

**DATED** November 12, 2021.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge
